UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TROY SANDERS

vs.

WALGREENS and RICHARD KRITE

Case No. 08-1051-MLB-DWB

## COMPLAINT

1. Plaintiff is a resident of Kansas.

2. Defendant Walgreens.com, Inc. is a foreign corporation that does business in Kansas. It can be served by service on Corporation Service Company, 200 SW 30th Street, Topeka, KS 66611. Defendant Crite is a Kansas resident and was the supervisor of Plaintiff's department, though he was not Plaintiff's immediate supervisor.

3. From May 23, 2006 to November 27, 2007, Defendants were Plaintiff's "employers" as that term is defined in the Family and Medical Leave Act.

4. On May 23, 2007, Plaintiff had worked twelve months and 1250 hours, which made him an eligible employee under the Family and Medical Leave Act.

5. In August, 2007, Plaintiff applied for intermittent FMLA leave to take his spouse for doctor visits. He filled out the leave request paperwork and included a doctor's certification that certified that his spouse had a serious health condition and he needed to take intermittent leave for her care. He gave it to his immediate supervisor who signed an acknowledgment on the form that the leave request was received.

6. Plaintiff's immediate supervisor admitted to Plaintiff that he had no FMLA or

1

medical training. When Plaintiff initially brought in his FMLA request, Plaintiff's supervisor began doing internet research in front of Plaintiff to "see whether these diseases exist." Plaintiff does not believe his immediate supervisor was qualified to do medical research about his leave request. Nevertheless, Plaintiff understood that his initial request for intermittent leave to take his wife to doctor's appointments was approved.

6. Plaintiff's spouse suffers from a chronic serious health condition and when she is incapacitated, she needs her husband's assistance with driving to doctor's visits, assistance with daily activities and psychological comfort.

7. After the initial approval of Plaintiff's leave, his spouse needed to visit the doctor without an appointment. When Plaintiff told his supervisor why he needed to be off work, he was told that his FMLA leave covered only "scheduled" doctors' appointments. This was an interference with Plaintiff's right to FMLA leave.

8. On October 19, 2007, Plaintiff submitted another request for intermittent leave to care for his wife. The same serious health condition was cited and the same medical certification was submitted by the same doctor. There was no change in the medical information, except that the request and certification requested that he would need to work intermittently because he would be "needed for office visits, assistance with driving, daily activities and spousal care during times of incapacitation." The certification stated that Plaintiff's spouse "required assistant for basic medical or personal needs, safety and transportation." It also stated that Plaintiff's presence to provide psychological comfort would assist in his spouse's recovery. The leave request was signed by Plaintiff on October 19, by his wife's physician the same date and by his immediate supervisor on October 22, 2007. Plaintiff missed work on October 22-25, 2007 to

care for his wife, who was ill and needed the type of assistance specified in the medical certification.

9. On November 2, 2007, several days after Plaintiff's second request, he was asked to approve in writing that Walgreens' "consultant physician" be allowed to "reach out to your wife's doctor." This request had not been made when Plaintiff requested leave in August, even though Plaintiff's wife's condition was the same. Plaintiff signed to indicate his approval.

10. Two weeks later, on Friday, November 16, 2007, Plaintiff was presented with a "Release of Medical Records" and was told his wife had to sign it by the next Monday in order to have his FMLA leave approved. The original release provided by Walgreens requested all of his wife's medical records.

11. On Monday, November 18, 2007 Plaintiff told his immediate supervisor that he needed to miss work to care for his wife. His supervisor said he had to come to work and bring the medical release or "there is nothing I can do for your on this FMLA thing." Plaintiff had a neighbor care for his wife while he went to work. He provided the release with his wife's signature on November 18, 2007.

11. The next day, Plaintiff's immediate supervisor issued written discipline that said Plaintiff was not "within the Guidelines of FMLA" because he had only been approved to take his spouse to the doctor, and he had not been approved to act as caregiver and that he needed a "re-certification" to cover future absences. Plaintiff insisted that he had already provided a request for intermittent leave and a doctor's certification that provided he was needed for "spousal care during times of incapacity" on October 19. His supervisor, who had signed the request for leave almost a month previous, claimed Walgreens had not yet approved that request.


Walgreens never refused Plaintiff's request in writing. Plaintiff faxed again faxed a copy of the October request and the medical certification.

7. On Tuesday, November 27, Plaintiff called and told his supervisor that he was needed at home to care for his wife. Defendant Crite called Plaintiff and said Plaintiff must come to work. Plaintiff insisted that he was entitled to FMLA leave to care for his wife who was incapacitated and that he had at least twice submitted a doctor's certification saying that he was needed to intermittently care for his wife during times she was incapacitated. Despite his immediate supervisor having signed his request for leave and despite there have never been any written refusal of his leave at the time of his request, Defendant Crite fired him immediately for "excessive absences." All of the absences for which he was fired were required by his need to care for his wife and took place after his properly documented request and should have been excused as FMLA- protected leave.

10. In addition to the leave Plaintiff took, because of the hostility of his immediate supervisor and Defendant Crite to his requests for leave, Plaintiff occasionally arranged for others to care for his wife when she was incapacitated. On more than one occasion after he had properly requested FMLA leave and submitted a doctor's certification, he called to say he needed to care for his wife, and his immediate supervisor or Crite told him he "could not" take leave. Sometimes he would arrange for others to care for his wife so that he would not have to miss work. In this way, Defendants interfered with his right to take intermittent FMLA leave.

11. When Plaintiff, who was performing satisfactorily, was fired because of his attendance, he was told by Defendant Crite that Defendants' doctors had conferred with his wife's health care provider and "FMLA leave was not approved for you to care for your spouse,"

that "we can't have part-time employees" and "our doctor did not approve your leave." Plaintiff was never provided with any documentation from the employer about his leave being denied, nor did the Defendants comply with any of the provisions of 29 CFR 825.307 or make a request for his wife to be examined by another health care provider. Plaintiff told Crite at the time of his discharge that his supervisor had signed his October request for leave and that Plaintiff had even resubmitted that request in November. Crite said that he would "investigate," but Plaintiff never heard from him.

12. Plaintiff complained repeatedly to Defendants prior to his being discharged that Defendants were violating his rights to FMLA leave. Defendants discharged Plaintiff both in an effort to interfere with his right to FMLA leave and in retaliation for his complaints.

13. Because of Defendants' unlawful denial of and interference with Plaintiff's leave and because of their retaliatory and unlawful discharge of his employment, Plaintiff and his family have suffered loss of wages, the loss of their home and of Plaintiff's vehicle. Plaintiff was in the process of applying for health insurance benefits at the time of his discharge and has suffered the loss of those.

WHEREFORE, Plaintiff prays for reinstatement or front pay in lieu of reinstatement, lost wages, employment benefits, including health insurance and bonuses and raises and promotions received by others in his position, liquidated damages, the cost of providing care for his wife on days his leave was denied, interest, attorneys' fees, expert witness fees and court costs and other injunctive and equitable relief.

*/s/ Gaye B. Tibbets*
_____
Gaye B. Tibbets, 13240
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202-2209
Telephone: (316) 265-7741
Facsimile: (316) 267-7803
E-mail: tibbets@hitefanning.com
*Attorneys for Plaintiff, Troy Sanders*